# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BAUGUESS ELECTRICAL SERVICES, INC., <br>     Plaintiff, <br><br> v. <br><br> HOSPITALITY BUILDERS, INC., <br>     Defendant. | CIVIL ACTION <br><br><br><br> NO. 20-214 |

## MEMORANDUM AND ORDER

**JOYNER, J.**                                                            **February 24, 2020**

    This civil action, which was removed from the Court of Common Pleas of Delaware County, is before us now for adjudication of Plaintiff's Motion to Compel Arbitration and stay proceedings. For the reasons outlined in the following paragraphs, the Motion shall be GRANTED IN PART and DENIED IN PART.

## Statement of the Case

    This matter arises out of the construction of a Candlewood Suites Hotel in Chester, Delaware County, Pennsylvania which commenced in or around May, 2017. Defendant, Hospitality Builders, Inc. ("HBI") was hired to act as the general contractor on the hotel and it, in turn, entered into a sub-contract with Plaintiff to perform some of the electrical work

1

on the project. Plaintiff alleges that it performed all of its work under the sub-contract in a good and workmanlike manner, that the entire project has since been completed and turned over to the owner, and that the hotel is now operational. Despite this, Plaintiff avers that HBI has failed and/or refused to pay it more than $80,000 which is still due and owing under the parties' agreement for the work performed.

On October 18, 2019, Plaintiff filed a mechanic's lien claim against the property with the Delaware County Court[1] in the amount of $83,326.30 and seeking additional interest and costs. The claim noted that Plaintiff last performed work on the project on May 28-29, 2019. On or about December 6, 2019, Plaintiff filed a Demand for Arbitration with the American Arbitration Association ("AAA") under the Construction Arbitration Rules and pursuant to the arbitration provisions contained in its sub-contract with HBI dated May 4, 2017. On December 23, 2019, Plaintiff filed the Petition/Motion to Compel Arbitration in the Delaware County Court of Common Pleas and in response on January 13, 2020, Defendant removed the matter to this Court pursuant to 28 U.S.C. §1441 as the case involves

---

[1] The pleadings in this matter allege that the mechanics lien claims were filed in the office of the Delaware County Prothonotary. However, the correct name for the office in which the claims were filed is the Office of Judicial Support, which is the repository for all criminal, civil and related filings in the Court of Common Pleas of Delaware County. See, e.g., www.delcopa.gov/ojs.

2

parties of diverse citizenship under 28 U.S.C. §1332 (diversity jurisdiction).

    Given that HBI has also not been paid the full amount which it contends is due to it under its contract with the hotel's owner, VB Hospitality, LLC ("VBH"), it too filed three mechanics lien claims in the Delaware County Office of Judicial Support in the cumulative amount of $1,978,903.33. HBI claims that these mechanics' liens encompass the payment which it owes to Plaintiff and, as a result of these mechanics' liens and the outstanding amount which it is owed, HBI and VBH are presently engaged in arbitration proceedings through the AAA in South Dakota in accordance with the terms of the general contract between them. HBI, which has its business address at 150 Knollwood Drive, Rapid City, SD, also avers that its sub-contract with Plaintiff likewise dictates that arbitration of the instant dispute take place in South Dakota. In its Arbitration Demand and the motion/petition to compel arbitration, which is now before this Court, Plaintiff seeks to arbitrate its payment dispute with Defendant in Delaware County on the grounds that this venue is required by Section 14 of the Pennsylvania Contractor and Subcontractor Payment Act, 73 P.S. §514 ("CASPA"). Defendant rejoins that the CASPA is pre-empted by the Federal Arbitration Act, 9 U.S.C. §1, *et. seq.* and

therefore arbitration of the dispute between these parties should take place in South Dakota.

## Discussion

It is well-settled that Congress enacted the Federal Arbitration Act to address what appeared at that time to be the undue hostility on the part of courts to arbitration and that in so doing, Congress "directed courts to abandon their hostility and instead treat arbitration agreements as 'valid, irrevocable, and enforceable.'" Epic Systems Corp. v. Lewis, 138 S. Ct. 1612, 1621, 200 L. Ed.2d 889 (2018)(quoting 9 U.S.C. §2); CompuCredit Corp. v. Greenwood, 565 U.S. 95, 97, 132 S. Ct. 665, 669, 181 L. Ed.2d 586 (2012).[2] "The Act, … establishes 'a liberal federal policy favoring arbitration agreements.'" Id., (quoting Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed.2d 765 (1983)). To this end, the FAA "entitles any party aggrieved by the alleged failure of another to arbitrate under a written agreement for arbitration to obtain a court order directing that

---

[2] Specifically, Section 2 of the Act provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

4

such arbitration proceed in the manner provided for in such agreement." Puleo v. Chase Bank USA, N.A., 605 F.3d 172, 178 (3d Cir. 2010)(quoting 9 U.S.C. §4).

First and foremost, however, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648, 106 S. Ct. 1415, 1418, 89 L. Ed.2d 648 (1986)(quoting United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S. Ct. 1347, 4 L. Ed.2d 1409 (1960)). See also, Century Indemnity Co. v. Certain Underwriters at Lloyd's, 584 F.3d 513, 523-524 (3d Cir. 2009)("Because an arbitrator's authority derives solely from the parties' agreement to submit their disputes to arbitration, a party cannot be compelled to submit a dispute to arbitration unless it has agreed to do so"). "The Federal Arbitration Act … enables the enforcement of a contract to arbitrate, but requires that a court shall be 'satisfied that the making of the agreement for arbitration is not in issue' before it orders arbitration." Guidotti v. Legal Helpers Debt Resolution, LLC, 716 F.3d 764, 771 (3d Cir. 2013).

The standards for adjudicating a motion to compel arbitration may differ depending upon whether the parties agree that there exists a valid arbitration agreement or whether

questions are raised as to the validity and/or enforceability of the agreement.  Where the *existence* of a valid agreement to arbitrate between the parties is apparent from the face of the complaint or incorporated documents, the motion to dismiss standard applies, such that "accepting all factual allegations as true and construing the complaint in the light most favorable to the plaintiff," any "plausible" reading of the pleadings would entitle the plaintiff to relief.  See, Singh v. Uber Technologies, Inc., 939 F.3d 210, 216 (3d Cir. 2019)(citing Guidotti, at 772, 774, 776).  "'But if the complaint and its supporting documents are unclear' as to whether the parties agreed to arbitrate, '*or* if the plaintiff has responded to a motion to compel arbitration with *additional facts* sufficient to place the agreement' in dispute, a 'restricted inquiry into factual issues is necessary."   Id.; Asberry-Jones v. Wells Fargo Bank, N.A., Civ. A. No. 19-83, 2019 U.S. Dist. LEXIS 79387 at *5 - *6, 2019 WL 2077731 (E.D. Pa. May 10, 2019).  In that event, the motion to compel arbitration is judged under a summary judgment standard. Singh, supra.  The motion shall then only be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Guidotti, 716 F.3d at 772(citing Fed. R. Civ. P. 56).

Instantly, there appears to be no dispute as to whether the agreement between these parties providing for Plaintiff to perform electrical work as a sub-contractor contains an agreement to arbitrate. To be sure, both parties are desirous and are seeking to have their dispute arbitrated under the auspices of the AAA. Instead, the dispute here centers around whether the *location* for the arbitration proceedings should be in Delaware County, Pennsylvania or in South Dakota. Indeed, the fact and manner of resolution of disputes by arbitration is extensively covered in Article 13 of the Agreement between Hospitality Builders, Inc. and Baguess Electrical Services, Inc. dated May 4, 2017. Paragraph 13.3 reads as follows in relevant part:

> (i) The arbitration shall be conducted in the same manner and under the same procedure as provided in the Contract Documents with respect to disputes between the Owner and the Contractor, except as otherwise provided herein. If the Contract Documents do not provide for arbitration or fail to specify the manner and procedure for arbitration, it shall be conducted in accordance with the Construction Industry Arbitration rules of the American Arbitration Association. A decision by the Architect shall not be a condition precedent to arbitration. The parties specifically agree that the hearing locale for any arbitration proceedings between the Contractor and the Subcontractor shall be Aberdeen, South Dakota.
>
> …
>
> (iii) The agreements to arbitrate contained herein and any other written agreement to arbitrate with an additional person or persons referred to herein shall be specifically enforceable under the prevailing

>     federal and South Dakota arbitration laws.  The award
>     rendered by the arbitrator shall be final, and
>     judgment may be entered upon it in accordance with
>     applicable law in any court having jurisdiction
>     thereof.  In any legal proceedings to compel
>     arbitration in accordance with this Agreement or to
>     stay litigation pending such arbitration, the
>     prevailing party shall be entitled to recover its
>     attorney's fees and expenses from the other party.

(Exhibit 1 to Plaintiff's Motion to Compel Arbitration, pp. 25-26).

In moving to compel arbitration in Delaware County, Pennsylvania, Plaintiff alleges that the last sentence of Paragraph 13.3(i)(*i.e.*, the agreement that arbitration take place in South Dakota) runs afoul of the Pennsylvania Contractor and Subcontractor Payment Act, 73 P.S. §501, *et. seq.* ("CASPA") insofar as Section 14 of that Act provides:

> Making a contract subject to the laws of another state or requiring that any litigation, arbitration or other dispute resolution process on the contract occur in another state, shall be unenforceable.

73 P.S. §514.

The purpose of the CASPA is to protect contractors and subcontractors and to encourage fair dealing among parties to a construction contract.  Waller Corp. v. Warren Plaza, Inc., 95 A.3d 313, 316, 2014 PA Super 134 (Pa. Super. Ct. 2014).  "The statute provides rules and deadlines to ensure prompt payments under construction contracts, to discourage unreasonable withholding of payments, and to address the matter of progress

payments and retainages." Scungio Borst & Associates v. 410 Shurs Lane Developers, LLC, 106 A.3d 103, 109, 2014 PA Super 260 (Pa. Super. Ct. 2014)(quoting Waller, id.)

It is well-settled that "[a] federal court sitting in diversity must apply state substantive law and federal procedural law." Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000)(citing Erie R.R. v. Tompkins, 304 U.S. 64, 78, 58 S. Ct. 817. 82 L. Ed. 1188 (1938)). "This substantive/procedural dichotomy of the 'Erie rule' must be applied with the objective that 'in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court will be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.'" Id, at 158-159 (quoting Guaranty Trust Co. v. York, 326 U.S. 99, 109, 65 S. Ct. 1464, 89 L. Ed. 2079 (1945)). In application of the Erie rationale, the United States District Court for the Western District of Pennsylvania in Sauer, Inc. v. Honeywell Bldg. Solutions SES Corp., 742 F. Supp. 2d 709, 714-715 (W.D. Pa. 2010) held that inasmuch as CASPA is Pennsylvania substantive law, that case was properly before it rather than the Southern District of Texas irrespective of the choice of forum clause in the parties' subcontract.

However, in contrast and in addressing a preemption argument like the one with which we are presented in this case, our former colleague Judge Stengel in S & G Electric, Inc. v. Normant Security Group, Inc., Civ. A. No. 06-3759, 2007 U.S. Dist. LEXIS 5395, 2007 WL 210517 (E.D. Pa. Jan. 24, 2007), found that CASPA was preempted under the Constitution's Supremacy Clause by the FAA and he therefore enforced a choice of forum clause in a subcontract which directed that "any controversy or claim arising out of related to this subcontract, or the breach thereof, shall be settled by arbitration…" to "be conducted in Montgomery, AL or at the nearest AAA office as decided by [defendant]." Citing Schneidewind v. ANR Pipeline Co., 485 U.S. 293, 299-300, 108 S. Ct. 1145, 99 L. Ed.2d 316 (1988) and Pokorny v. Ford Motor Co., 902 F.2d 1116, 1121-22 (3d Cir. 1990), Judge Stengel recognized that federal preemption of state law can occur in three types of situations: (1) where Congress explicitly preempts state law ("express preemption"), (2) where preemption is implied because Congress has occupied the entire field ("field preemption"), and (3) where preemption is implied because there is an actual conflict between federal and state law ("conflict preemption"). Citing Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University, 489 U.S. 468, 477-79, 109 S. Ct. 1248, 103 L. Ed.2d 488 (1989) in which the Supreme Court held that the FAA does not contain an

express preemption provision or reflect a Congressional intent to occupy the entire field of arbitration, Judge Stengel concluded that the only way in which the Defendant could bar the application of Pennsylvania law was under a conflict preemption theory, which required that the Court use federal law if applying Pennsylvania law would undermine the primary purpose of the FAA.  Reasoning that the primary purpose of the FAA is to ensure "that private agreements to arbitrate are enforced according to their terms," and one of the terms of the agreement in that case required arbitrating the matter in Montgomery, Alabama, Judge Stengel concluded that a conflict existed between the FAA and Pennsylvania's CASPA.  Consequently, the motion to compel arbitration in Alabama was granted.

   In now carefully examining the arbitration provisions in the subcontract at issue under the guidance provided by the foregoing authorities, we likewise find that the terms of the agreement here clearly require that this matter be arbitrated in South Dakota.  To be sure, under Paragraphs 13.3(i) and (iii), "[t]he parties specifically agree that the hearing locale for any arbitration proceedings between the Contractor and the Subcontractor shall in Abderdeen, South Dakota" and "[t]he agreements to arbitrate … shall be specifically enforceable under the prevailing federal *and South Dakota arbitration laws.*"

(emphasis added).  What's more, the terms of the parties' agreement also provides:

> If arbitration is conducted by the Owner and the Contractor concerning any dispute between them which likewise involves a dispute between the Contractor and the Subcontractor, then the Subcontractor agrees to a joint arbitration with Owner, Contractor and Subcontractor as well as with any other parties thereto, pursuant to the conditions ordered by rules of the American Arbitration Association.

Paragraph 13.2(iv).  Given that HBI is presently engaged in arbitration proceedings with the property's owner, (VBH) in South Dakota and being mindful that Volt directs that private agreements to arbitrate be enforced according to their terms, we shall grant that part of Plaintiff's Motion/Petition which seeks to compel this matter to arbitration in accordance with the Construction Industry Rules of the American Arbitration Association but deny that part which seeks to compel those proceedings to take place in Delaware County, Pennsylvania.  Instead, we shall direct that arbitration of the dispute in this case take place in the location designated by the parties' agreement, *to wit*, Abderdeen, South Dakota.

An Order follows.